UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BOBBY EARL KEYS                                    CIVIL ACTION NO. 2:13-cv-2806
     FED. REG. NO. 03344-043

VERSUS                                             JUDGE TRIMBLE

MIKE FRAMER, ET AL                                 MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* by *pro se* plaintiff Bobby Earl Keys.  This matter arises under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  In *Bivens*, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 USC § 1983.

Plaintiff is currently incarcerated at the Federal Correctional Institute in Oakdale, Louisiana (hereafter "FCIO").  He complains of events that occurred at FCIO and during his incarceration in the Stone County Jail System in Stone County, Mississippi (hereafter "SCJ"). As defendants, plaintiff names Stone County Sheriff Mike Framer and Bureau of Prisons (hereafter "BOP") Director Charles E. Samuels, Jr.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

*Background*

Plaintiff states that his civil rights were violated by denial of adequate medical care at both SCJ and FCIO.  Plaintiff states that he was incarcerated at SCJ from October 20, 2011, until June 28, 2012.  Doc. 1, p. 6.  He claims that he suffered from depression prior to arriving at SCJ but was otherwise healthy.  *Id*.  On May 13, 2012, he had a psychotic episode where he alleges he heard voices, hallucinated, and had suicidal thoughts.  *Id*.  He was examined by a SCJ nurse who determined that he was a threat to himself and others and he was placed in "mental-health strip cell status."  *Id*.  The nurse attempted to treat plaintiff's mental condition by increasing his dosage of anti-depressants.  *Id*.

On May 18, 2012, plaintiff states that he collapsed onto the floor of the mental-health strip cell unit and severely injured his head.  *Id*.  He also claims that despite witnessing the incident, Stone County employees failed to render aid and left him unconscious on the floor.  *Id*.  Upon regaining consciousness the next day, plaintiff claims he was nauseated; had a severe headache and a swollen head; had a loud squealing noise in his head; and had difficulty standing and balancing.  *Id*.  He states that he requested medical care but was ignored.  *Id*. at 7.  Given his numerous injuries, plaintiff accused several officers of beating and kicking him in the head while he was passed out.  *Id*. at 6.  He later learned that he fell as a result of the increased dosages of the antipsychotic medications.  *Id*.

Plaintiff was examined by a nurse on May 23, 2012 who arranged for him to see a doctor.  *Id*. at 7.  Plaintiff was examined by Dr. Burn on June 7, 2012.  Plaintiff states that he was diagnosed with "a brain injury…consistent with a traumatic blow to the head."  *Id*.  Plaintiff was treated with Tylenol and returned to his cell.  *Id*.  Sometime later, he collapsed again and struck

his head on the floor.  *Id.* at 8.  SCJ Officer Breland contacted Warden Brewer, who helped plaintiff get back in his cell bunk.  *Id.*

Plaintiff claims that he was denied adequate medical care during the entire period of time that he was housed at SCJ.  *Id.*  His confinement at SCJ ended on June 21, 2012, when he was placed en route to FCIO.  *Id.* at 9.  Plaintiff arrived at FCIO on July 12, 2012, and began to experience blackouts.  *Id.*  He complains that the medical staff at FCIO only treated him with Ibuprofen and Imitrex injections.  *Id.*  Plaintiff states that adjustments to his medications in March 2013, helped to decrease the blackouts but did not help his dizziness, balance problems, memory loss or headaches.  *Id.*

As a result of the above, plaintiff seeks compensatory damages and injunctive relief.  *Id.* at 16; Doc. 7, p. 6.

### Law and Analysis

### I.      Screening

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted.  See, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).  A complaint is frivolous if it lacks an arguable basis in law or fact.  *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir.1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997)).  A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998).  When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must

accept plaintiff's allegations as true.  *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

## II.    Bivens Action

As previously noted, plaintiff has filed a *Bivens* action.  According to the Fifth Circuit, a *Bivens* action is "analogous to an action under §1983 – the only difference being that §1983 applies to constitutional violations by state, rather than federal, officials."  *Izen v. Catalina*, 398 F.3d 363, 367 n. 3 (5th Cir. 2005).  Section 1983 and *Bivens* proscribe conduct by any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  Thus, an initial inquiry in a lawsuit filed under § 1983 is whether plaintiff has alleged that his constitutional rights have been violated.  If no constitutional violation has been alleged, there is no cognizable *Bivens* claim.  *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

### A.    Defendant Charles E. Samuel, Jr., Director of the BOP

#### 1.    Official Capacity

A plaintiff may bring a *Bivens* action against individual officers for an alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP officers in their official capacities as such claims are barred by the doctrine of sovereign immunity.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (claims against employees in official capacities are considered a suit against the government entity). Thus, to the extent that plaintiff attempts to name the BOP, a federal agency, as a defendant, he cannot maintain a *Bivens* action against it.  Nor can he maintain an action against defendant Samuel in his official capacity.

### 2.      *Supervisory Liability*

It is well settled that supervisory officials may not be held liable under the doctrine of *respondeat superior.  See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).  To be liable under § 1983 or *Bivens*, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation.  *Id.*

Plaintiff has named Samuel and/or the BOP as defendants but has not alleged personal involvement in the complained of actions.  Further, other than conclusory and broad statements, plaintiff has failed to show that these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights.

Plaintiff's claims against defendant Samuel and the BOP should be dismissed.

### B.      *Medical Care*

Plaintiff has failed to name any defendant that was in any way involved in the care that he received at FCIO.  Nevertheless, liberally construing plaintiff's complaint to assume that he has named a viable defendant, his claims are still subject to dismissal for the reasons below.

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment.  In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the

officials' response indicated that they subjectively intended that harm occur.  *Id.*at 458-59.

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not

is insufficient to show deliberate indifference."  *Domino v. Texas Department of Criminal*

*Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Moreover, "deliberate indifference cannot be inferred

merely from a negligent or even a grossly negligent response to a substantial risk of serious

harm." *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and

wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105

F.3d 1059, 1061 (5th Cir.1997).

　　　The fact that a plaintiff disagrees with what medical care is appropriate or with the course

of treatment offered by the medical staff does not state a claim of deliberate indifference to

serious medical needs.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  In *Woodall*

*v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test

in balancing the needs of the prisoner versus the needs of the penal institution is one of medical

necessity, not of desirability.

　　　The fact that a plaintiff does not believe that his medical treatment was as good as it

should have been is not a cognizable complaint under the Civil Rights Act.  Prisoners are not

constitutionally entitled to the best medical care that money can buy. *Woodall, supra.*  Merely

alleging a prison doctor should have undertaken additional diagnostic measures or utilized an

alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v.*

*Lynaugh*, 920 F.2d 320, 321(5th Cir.1992).  Furthermore, the fact that plaintiff continues to

suffer from pain is insufficient to establish that a constitutional violation has occurred.

*Mayweather v. Foti,* 958 F.2d 91 (5th Cir.1992).

In the present matter, plaintiff's medical care claims fail to establish the requisite deliberate indifference.  The information contained in plaintiff's complaints and the attachments thereto show that he received significant medical treatment.  Specifically, plaintiff states that upon arrival at FCIO, he was examined and treated with Ibuprofen and Imitrex for several months.  Doc. 1, p. 9; Doc. 7, p. 4.  Plaintiff then lists ten medications that he had been prescribed and he admits that the medications were adjusted at FCIO.  *Id*.

Further, plaintiff attached responses to grievances that he filed while at FCIO.  The first response [doc. 7, att. 1, p. 2], dated October 26, 2012, states that plaintiff was examined by an optometrist on August 10, 2012, to address plaintiff's concerns about blurry vision.  The exam was normal.  The response then states that plaintiff was seen by a doctor on September 6, 2012, for complaints about headaches.  During that visit, plaintiff stated that he had not been taking his blood pressure medication.  The physician prescribed medication for plaintiff's headaches and advised him to lose weight, exercise, and adhere to a low salt diet.  Plaintiff returned to medical on the same day with complaints of a headache.  He was seen by a clinical nurse, who gave him an injection per the doctor's orders from earlier in the day.  Plaintiff was reassessed four hours later and noted that his headache had gotten better.  The response also states that there was not any clinical indication that plaintiff had a concussion or that a consultation by a forensic neurologist was warranted.  *Id.*

The next response [doc. 7, att. 1, p. 1], dated January 10. 2013, states that, upon plaintiff's arrival at FCIO, an intake screening was completed and his history of high blood pressure, elevated cholesterol, depression, anxiety, and diabetes was noted.  The response indicates that plaintiff had been closely monitored through the chronic care clinic and sick call, and that adjustments to his treatment plan were made.  In addition to treatment for his chronic

conditions, plaintiff was also seen for complaints of headaches, dizziness, and loss of balance and his medications were adjusted.  *Id.*

The final response [doc. 7, att. 1, pp. 4-5] attached by plaintiff is dated August 29, 2013. It states that plaintiff told medical staff that, after taking the medication Trazodone on July 31, 2012, he felt dizzy and lost his balance, causing him to hit his head on a wall locker.  Plaintiff complained that he felt dizzy after every dose of Trazodone.  Thus, during his mental health chronic care clinic visit on August 3, 2012, he was told to taper off of the medication.  Plaintiff continued with the chronic care clinic visits, and it was noted that his symptoms had resolved.

On November 8, 2012, plaintiff submitted a request for a neurological consultation which was denied after the Utilization Review Committee found that his symptoms had improved. Plaintiff's request for an MRI was also denied because there was no clinical indication for same. Plaintiff was removed from the mental health chronic care clinic on July 22, 2013.

Based on the above, it is clear that FCIO did not refuse to see or treat plaintiff.  Plaintiff's allegations, at most, state a disagreement between him and the medical staff regarding the procedures to treat his medical problems.  While he may not agree with their assessment of his physical condition or the treatment that was provided, such allegations do not constitute deliberate indifference.  The facts of this matter do not demonstrate that his complaints were ignored or that he was intentionally treated incorrectly or with a wanton disregard for his medical needs.  The evidence before the court does not support a finding of deliberate indifference, and his claims against FCIO should be dismissed.

Accordingly, this court finds that plaintiff's medical care claims should be dismissed.

### C.        Defendant Mike Framer, Stone County Sherriff

Plaintiff claims that he was denied adequate medical care at SCJ in Mississippi and he names Stone County Sheriff Mike Framer as defendant in regard to his claims arising at that facility.  Plaintiff's claim against Framer states that it was a policy/procedure of his office to deny or delay medical care.  As such, we find that these claims should survive initial review.  *See Parker v. Gautreaux,* 2014 WL 4185296 *4 (M.D. La. Aug. 21, 2014(because a sheriff is deemed to be the final policymaker he may be sued in his official capacity).  However, we find that this claim would best be reviewed by the proper court in the State of Mississippi.  Sheriff Framer does not reside in Louisiana and SCJ is not located in Louisiana.  Any witnesses to the complained of actions are not in Louisiana nor or the files or medical records.

Title 28 U.S.C. §§ 1406(a) and 1404(a) allow transfer of a case from one district to another district or division in which venue is proper, for the convenience of parties and witnesses and in the interest of justice.  *See Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir.1999).  This court is dismissing plaintiff's claims against Charles E. Samuel, Jr., the BOP, and all matters relative to the events that occurred in the Western District of Louisiana.  As such, the only remaining claims will be against Stone County, Mississippi, Sheriff Mike Framer.  Thus, it is in the interest of justice and fairness to the parties that this civil action be transferred to the United States District Court for the Southern District of Mississippi for further consideration.

### Conclusion

For reasons stated,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint as to Charles E. Samuel, Jr., the BOP, and all matters relative to the events that occurred in the Western District of

Louisiana be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS ALSO RECOMMENDED** that plaintiff's civil rights action against Stone County, Mississippi, Sheriff Mike Framer be transferred to the United States District Court for the Southern District of Mississippi for further consideration.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 7th day of October, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE